J-A03006-21 & J-A03007-21

2021 PA Super 40

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KEVIN EUGENE GILLIAM | : | |
| | : | |
| Appellant | : | No. 2092 MDA 2019 |

Appeal from the Judgment of Sentence Entered December 13, 2018
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0000320-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KEVIN EUGENE GILLIAM | : | |
| | : | |
| Appellant | : | No. 2093 MDA 2019 |

Appeal from the Judgment of Sentence Entered December 13, 2018
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0000355-2017

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

OPINION BY MURRAY, J.:                    **FILED MARCH 12, 2021**

In these consolidated appeals, Kevin Eugene Gilliam (Appellant) appeals

from the judgment of sentence imposed after a jury convicted him of two

counts of indecent assault without consent and one count of aggravated

indecent assault without consent;[1] the trial court also convicted Appellant of three counts of summary harassment.[2] Upon careful review, we affirm.

Appellant, a licensed massage therapist, owned and operated a spa located in State College, Pennsylvania. In January 2017, two of Appellant's female clients, J.G. and K.J. (collectively, "the victims"), reported to police that Appellant had inappropriately touched their genitals and breasts during massages, without their consent.[3]

In March 2017, the Commonwealth charged Appellant with several counts of indecent assault, aggravated indecent assault and harassment. These offenses were charged in two separate informations, respectively docketed at 14-CR-355-2017 (pertaining to J.G.), and 14-CR-320-2017 (pertaining to K.J.) (collectively referred to as the "trial court dockets"). Upon motion of the Commonwealth, the trial court dockets were joined.

On September 12, 2018, the Commonwealth filed motions *in limine*, including a motion to admit evidence of Appellant's other bad acts, pursuant

---

[1] 18 Pa.C.S.A. §§ 3126(a)(1), 3125(a)(1).

[2] *Id.* § 2709(a)(1).

[3] We set forth below a recitation of the victims' testimony.

to Pennsylvania Rule of Evidence 404(b)[4] (the "Rule 404(b) motion").

Specifically, the Commonwealth sought to introduce the following:

**Prior Act # 1: Victim [S.S.]**

In 2013, [S.S.] went to [Appellant's] place of business on numerous occasions for massages. [S.S.] was a regular customer for two years, receiving massages from [Appellant] without any inappropriate touching and he would never massage her higher than about ¾ up her leg. However, on one occasion, [Appellant] touched her the entire way up her leg and touched her vagina. She never went back for another massage. [S.S.] came forward after [Appellant] was charged in the present cases.

**Prior Act # 2: Victim [A.W.]**

In 2015, [A.W.] was a graduate student at Penn State University. She went to [Appellant's] place of business for pain management massages. As a regular customer, [A.W.] trusted [Appellant]. At an evening appointment, [A.W.] was alone at the spa with [Appellant]. During a massage, [Appellant] rubbed [A.W.'s] vagina. [A.W.] never went back but did receive a call from [Appellant] asking if she was okay. She came forward after [Appellant] was charged in the present cases.

_____

[4] Rule 404(b) provides in relevant part:

**(b) Crimes, Wrongs or Other Acts.**

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

**Prior Act # 3**: Victim [**E.G.**]

In 2012, [E.G.] went to [Appellant's] place of business for pain management massages. She bought a package for massages after she had gone a few times and received massages without incident. [Appellant] would typically massage her ¾ of the way up her leg and stop. On the last occasion when [E.G.] went for a massage, [Appellant] was massaging up her legs and went the entire way up her leg and touched her vagina. He also massaged the middle of her back and touched her breasts on both sides. [E.G.] never went back to the spa.

**Prior Act # 4**: Victim [**D.D.**]

In 2012, [D.D.] was working at [Appellant's] spa as an intern while she was a student. [Appellant] asked her to do massages on customers. As part of [D.D.'s] training to do massages on others, [Appellant] insisted on giving [D.D.] massages. During a massage, [Appellant] went too high up on [D.D.'s] leg and almost touched her vagina. While working on [D.D.'s] back during the massage, [Appellant] also touched the sides of both of [D.D.'s] breasts. [D.D.] came forward after [Appellant] was charged in the present cases.

All of the victims were females that went to [Appellant] for massages and [] after [Appellant] would gain their trust after a few sessions, he would inappropriately touch their vaginas and breasts while alone in the massage room. In the case of each victim, [Appellant] would use a "grooming" process to make the individual feel comfortable and gain their trust. After several massages without incident, [Appellant] would inappropriately touch the victim while alone in the massage room.

Motion *in Limine*, 9/12/18, at 6-7 (paragraph numbering and breaks omitted).

Appellant filed a response in opposition to the Rule 404(b) motion, asserting that the probative value of the proffered evidence was greatly outweighed by the potential prejudice to Appellant. The trial court conducted

- 4 -

a hearing on the matter on September 19, 2018. One day later, the trial court entered an opinion and order granting the Rule 404(b) motion.

The matter proceeded to a jury trial, commencing on September 24, 2018. The Commonwealth presented the testimony of, *inter alia*, the victims and two of the women identified in the Rule 404(b) motion, S.S. and E.G. The Commonwealth also called Nick Peters (Peters), whom the trial court qualified as an expert in the field of massage therapy techniques and protocol.

During S.S.'s testimony, she improperly opined on the credibility of the victims' accusations against Appellant. In response, Appellant's counsel moved for a mistrial at sidebar. The trial court declined to grant a mistrial; however, it issued a cautionary instruction to the jury, explaining the limited purpose for which it could consider S.S.'s testimony.

Trial resumed and Appellant testified that he never inappropriately touched the victims. Appellant asserted it would have been impossible for him to do so, as he always properly draped his clients with sheets that covered their intimate areas. At the close of trial, the jury found Appellant guilty of aggravated indecent assault without consent and indecent assault without consent at Docket 320, pertaining to K.J., and guilty of indecent assault without consent at Docket 355, pertaining to J.G. (the jury acquitted Appellant of the aggravated indecent assault of J.G.).

On November 28, 2018, the Commonwealth gave Appellant notice of its intent to seek a 25-year mandatory minimum sentence (Notice), under 42

Pa.C.S.A. § 9718.2 (pertaining to recidivist sexual offenders). Sentencing occurred on December 13, 2018; there, Appellant objected to the application of section 9718.2. The trial court rejected Appellant's argument and imposed an aggregate prison sentence of 25 to 50 years, pursuant to section 9718.2.

On December 26, 2018, Appellant filed a timely post-sentence motion claiming that the jury's verdict was against the weight of the evidence. By an opinion and order entered on March 26, 2019, the trial court denied the post-sentence motion. Appellant did not file a notice of appeal.

The trial court subsequently reinstated appellant's direct appeal rights, *nunc pro tunc*, in response to a petition filed by Appellant under the Post Conviction Relief Act. **See** 42 Pa.C.S.A. §§ 9541-9546. Appellant then timely filed notices of appeal,[5] one at each docket before this Court, *i.e.*, 2092 MDA 2019 (No. 2092) and 2093 MDA 2019 (No. 2093).[6] Both Appellant and the trial court have complied with Pa.R.A.P. 1925.[7]

In the appeal at No. 2093, Appellant presents 9 issues for our review:

---

[5] Appellant purports to appeal from the order denying his post-sentence motion; he also references the order reinstating his direct appeal rights *nunc pro tunc*. However, "[a]n appeal from an order denying a post-trial motion is procedurally improper because a direct appeal in a criminal proceeding lies from the judgment of sentence." **Commonwealth v. W.H.M.**, 932 A.2d 155, 158 n.1 (Pa. Super. 2007). We overlook this defect. **See id.**

[6] Because these appeals are very closely related, we consolidated them *sua sponte*.

[7] The trial court issued a single Rule 1925(a) opinion for both trial court dockets.

I.   Whether the trial court erred in finding sufficient evidence for conviction for 18 [Pa.C.S.A.] § 3126 §§ A1, indecent assault without consent of other, when the Commonwealth failed to prove that [Appellant] had indecent contact with the complainant?

II.   Whether the trial court erred in finding sufficient evidence for conviction for 18 [Pa.C.S.A.] § 3126 §§ A1, indecent assault without consent of other, when the Commonwealth failed to prove that [Appellant] acted with the purpose of arousing sexual desire in the person or the complainant?

III.  Whether the trial court abused its discretion in denying [Appellant's] post-sentence motion challenging the weight of the evidence and denying a request for a new trial on the charge of 18 [Pa.C.S.A.] § 3126 §§ A1, indecent assault without consent of other?

IV.  Whether the trial court erred in allowing the Commonwealth to present the expert testimony of Nick Peters when the expert's scientific, technical, or other specialized knowledge would not help the trier of fact to understand the evidence or to determine a fact in issue pursuant to Pa.R.E. 702?

V.   Whether the trial court erred in allowing S.S. to testify pursuant to Pa.R.E. 404(b)(2) when the testimony would not prove a common plan or scheme, absence of mistake, or lack of accident and the probative value of the evidence was outweighed by its potential for unfair prejudice?

VI.  Whether the trial court erred in allowing E.G. to testify pursuant to Pa.R.E. 404(b)(2) when the testimony would not prove a common plan or scheme, absence of mistake, or lack of accident and the probative value of the evidence was outweighed by its potential for unfair prejudice?

VII.  Whether the trial court erred in failing to grant [Appellant's] motion for a mistrial after testimony was elicited from S.S. that went to [Appellant's] propensity to commit a crime rather than the permissible uses under Pa.R.E. 404(b)(2)?

VIII. Whether the trial court erred in sentencing [Appellant] to a mandatory term pursuant to 42 Pa[.C.S.A. §] 9718.2 without a hearing when, although conceding that the elements of the

purported conviction were present, [Appellant] challenged whether or not his purported previous conviction in New York was in fact a conviction?

IX. Whether the trial court erred in sentencing [Appellant] to a mandatory term pursuant to 42 Pa[.C.S.A. §] 9718.2 when the issue of whether or not [Appellant] had a previous conviction mandating a minimum sentence was not presented to the finder of fact and proven beyond a reasonable doubt pursuant to **Alleyne v. United States**[, 570 U.S. 99 (2013)]? [Appellant] is mindful that the current state of the law on this issue is inapposite of this position; however[, he] raises the claim solely for issue preservation in the event that [] there is a change in the state of the law.

Appellant's Brief – No. 2093, at 4-6 (issues renumbered for ease of disposition, some capitalization omitted).

In the appeal at No. 2092, Appellant presents 12 issues for our review, many of which are identical to his issues in No. 2093:[8]

I. Whether the trial court erred in finding sufficient evidence for conviction of 18 [Pa.C.S.A.] § 3126 §§ A1, indecent assault without consent of other, when the Commonwealth failed to prove that [Appellant] had indecent contact with the complainant?

II. Whether the trial court erred in finding sufficient evidence for conviction for 18 [Pa.C.S.A.] § 3126 §§ A1, indecent assault without consent of other, when the Commonwealth failed to prove that [Appellant] acted with the purpose of arousing sexual desire in the person or the complainant?

III. Whether the trial court erred in finding sufficient evidence to convict [Appellant] of 18 [Pa.C.S.A.] § 3125 §§ A1, aggravated indecent assault without consent, when the

_____

[8] To the extent that Appellant's issues in both appeals are identical, we address them simultaneously. Also, his argument on these issues, in both appellate briefs, is virtually identical.

- 8 -

Commonwealth failed to prove that [Appellant] penetrated, however slight, the genitals or anus of the complainant?

IV. Whether the trial court erred in finding sufficient evidence to convict [Appellant] of 18 [Pa.C.S.A.] § 3125 §§ A1, aggravated indecent assault without consent, when the Commonwealth failed to prove that [Appellant], a massage therapist, was not acting in good faith, while performing a medical, hygienic or law enforcement procedure?

V. Whether the trial court abused its discretion in denying [Appellant's] post-sentence motion challenging the weight of the evidence and denying a request for a new trial on the charge of 18 [Pa.C.S.A.] § 3125 §§ A1, aggravated indecent assault without consent?

VI. Whether the trial court abused its discretion in denying [Appellant's] post-sentence motion challenging the weight of the evidence and denying a request for a new trial on the charge of 18 [Pa.C.S.A.] § 3126 §§ A1, indecent assault without consent of other?

VII. Whether the trial court erred in allowing the Commonwealth to present the expert testimony of Nick Peters when the expert's scientific, technical, or other specialized knowledge would not help the trier of fact to understand the evidence or to determine a fact in issue pursuant to Pa.R.E. 702?

VIII. Whether the trial court erred in allowing S.S. to testify pursuant to Pa.R.E. 404(b)(2) when the testimony would not prove a common plan or scheme, absence of mistake, or lack of accident and the probative value of the evidence was outweighed by its potential for unfair prejudice?

IX. Whether the trial court erred in allowing E.G. to testify pursuant to Pa.R.E. 404(b)(2) when the testimony would not prove a common plan or scheme, absence of mistake, or lack of accident and the probative value of the evidence was outweighed by its potential for unfair prejudice?

X. Whether the trial court erred in failing to grant [Appellant's] motion for a mistrial after testimony was elicited from S.S. that went to [Appellant's] propensity to commit a crime rather than the permissible uses under Pa.R.E. 404(b)(2)?

XI.    Whether the trial court erred in sentencing [Appellant] to a mandatory term pursuant to 42 Pa[.C.S.A. §] 9718.2 without a hearing when, although conceding that the elements of the purported conviction were present, [Appellant] challenged whether or not his purported previous conviction in New York was in fact a conviction?

XII.   Whether the trial court erred in sentencing [Appellant] to a mandatory term pursuant to 42 Pa[.C.S.A. §] 9718.2 when the issue of whether or not [Appellant] had a previous conviction mandating a minimum sentence was not presented to the finder of fact and proven beyond a reasonable doubt pursuant to ***Alleyne v. United States***?   [Appellant] is mindful that the current state of the law on this issue is inapposite of this position; however[, he] raises the claim solely for issue preservation in the event that [] there is a change in the state of the law.

Appellant's Brief – No. 2092, at 4-6 (issues renumbered for ease of disposition, some capitalization omitted).

In both Nos. 2092 and 2093, Appellant challenges the sufficiency of the evidence supporting his convictions of indecent assault of the victims.  ***See*** Appellant's Brief – No. 2092, ***supra***, Issues I & II; Appellant's Brief – No. 2093, ***supra***, Issues I & II.[9]

In reviewing a sufficiency challenge, the standard of review we apply is

whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of

---

[9] Appellant does not challenge the trial court's verdicts on the harassment convictions.

- 10 -

innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa. Super. 2019) (citations and brackets omitted).

The Crimes Code defines indecent assault without consent as follows:

A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and . . . the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3126(a)(1). We have explained:

The separate crime of indecent assault was established because of a concern for the outrage, disgust, and shame engendered in the victim rather than because of physical injury to the victim. Due to the nature of the offenses sought to be proscribed by the indecent assault statute, and the range of conduct proscribed, the statutory language does not and could not specify each prohibited act.

*Commonwealth v. Provenzano*, 50 A.3d 148, 153 (Pa. Super. 2012) (citation omitted).

Appellant argues that the evidence was insufficient where the testimony of the victims established that Appellant was massaging them in his regular

- 11 -

manner, and, at most, may have inadvertently, "quickly brushed" their genitals. *See* Appellant's Brief – No. 2092, at 11-12; Appellant's Brief – No. 2093, at 8-9. Appellant further asserts that the record is devoid of any evidence that he "intended to act with a purpose of arousing the sexual desire in himself or [the victims]." Appellant's Brief – No. 2092, at 13; Appellant's Brief – No. 2093, at 10.

At trial, K.J. testified that she had been seeing Appellant as her massage therapist for several months before the assault, and she always wore her underwear while Appellant massaged her lower back and legs. N.T., 9/24/18, at 44, 48. She stated that during a massage on January 25, 2017, Appellant became more aggressive. *Id.* at 49; *see also id.* at 51 (explaining that Appellant usually massaged K.J. only up to "mid-thigh range."). Appellant grazed K.J.'s breasts several times during the January 25 massage. *Id.* at 49. Then, while massaging K.J.'s legs, Appellant "went directly to [her] vagina and started rubbing from top to bottom[.]" *Id.* at 52. K.J. stated that while Appellant was rubbing her genitals, she could "feel my underwear going into my vagina," which she visibly saw after the massage ended. *Id.* at 53, 54; *see also id.* at 52 (K.J. stating "I could actually feel my underwear being moved and jostled and pushed"). In response to Appellant's inappropriate touching, K.J. began crying and instructed Appellant to stop. *Id.* at 52. Appellant stopped and said to K.J., "Well, I guess I know what you like and don't like now." *Id.* After the massage, Appellant repeatedly told K.J. "You're

- 12 -

okay" and "We're okay, right?" *Id.* at 53, 57-58; *see also id.* at 58 (K.J. stating Appellant "was very insistent that, you know, I had to be okay.").

J.G. testified that she had been going to Appellant's spa for massages for approximately two years prior to the assault. *Id.* at 126. J.G. always wore underwear during the massages, but took her bra off. *Id.* at 129. On December 5, 2016, J.G. went to Appellant's spa for her typical massage of her shoulders, neck, and lower back. *Id.* On this occasion, however, Appellant was "much more aggressive" than usual. *Id.* at 130. J.G. stated that although Appellant had draped her intimate areas, on this occasion the drapes were "looser than usual." *Id.* at 131. Unlike prior massages, Appellant massaged J.G.'s "butt and he had to move the underwear over[.]" *Id.* Then, twice, Appellant's "fingers like touched . . . the outside of my vagina." *Id.* at 133. J.G. stated that Appellant's fingers "were like inside . . . the lips of my vagina." *Id.* at 134. J.G. further stated that "right before the massage was over, [Appellant] . . . put his hands under the blanket that was over me and was touching my breasts[.]" *Id.* at 136. J.G. never consented to the touching of her intimate areas, nor did she think Appellant's conduct was accidental. *Id.* at 134, 135.

Upon review, this evidence, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient for the jury to find that Appellant, without the victims' consent, had "indecent contact with the[m] … for the purpose of arousing sexual desire[.]" 18 Pa.C.S.A. § 3126(a)(1). It

is well settled that "even the uncorroborated testimony of a single witness may alone be sufficient to convict a defendant." ***Commonwealth v. Crosley***, 180 A.3d 761, 768 (Pa. Super. 2018) (citation omitted). Further, the Commonwealth need not establish "skin to skin" contact to sustain a conviction of indecent assault. ***Commonwealth v. Riccio***, 650 A.2d 1084, 1086 (Pa. Super. 1994). The evidence also supports the jury's finding that Appellant acted with the purpose of arousing sexual desire. ***See, e.g., Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006) (stating that touching of an intimate part of another person "does not occur outside of the context of a sexual or intimate situation."); ***see also*** N.T., 9/24/18, at 49, 130 (K.J. and J.G. testifying that Appellant massaged them more aggressively than usual during the incidents and touched their genitals). Finally, to the extent Appellant asserts the evidence fails to establish that he acted with the purpose of arousing sexual desire in **the victims**, this claim misses the mark. "[T]here is no statutory requirement that a defendant's actions have the purpose of arousing sexual desire in the victim" for a conviction of indecent assault. ***Commonwealth v. Leatherby***, 116 A.3d 73, 81-82 (Pa. Super. 2015). Accordingly, Appellant's sufficiency challenges to the jury's convictions on both indecent assault counts fail.

Appellant next contends, in his appeal at No. 2092, that the Commonwealth failed to present sufficient evidence to sustain his conviction

of aggravated indecent assault without the consent of K.J.  **See** Appellant's Brief – No. 2092, at 8-10.[10]

The statutory definition for aggravated indecent assault without consent provides:

> a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if . . . the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3125(a)(1).

Here, Appellant argues:

> [K.J.] testified that there was rubbing **on top** of her underwear. N.T., 9/24/18, at 52, 86, 87.  However, the record is devoid of any allegations of **penetration** on the part of the Appellant. Additionally, the Commonwealth did not attempt to present physical or forensic proof of penetration.

Appellant's Brief – No. 2092, at 9 (emphasis added, citation modified).

Appellant further claims:

> [K.J.] testified at trial that Appellant had rubbed her vagina but she had also figured that it was dark in the room so he may have been making a mistake.  N.T., 9/24/18, at 81.  Finally, when [K.J.] told him to stop, Appellant stopped.  **Id.** at 52.

Appellant's Brief – No. 2092, at 10 (citations modified).

The record evidence contradicts Appellant's bald claim that no evidence of penetration was presented.  Indeed, K.J. unequivocally testified that

---

[10] Appellant sets forth two separate issues challenging this conviction, *i.e.*, numbers III and IV, **supra**; we address them together.

Appellant penetrated her vagina and pushed her underwear inside. N.T., 9/24/18, at 53 ("I could feel my underwear going **into** my vagina" (emphasis added)); **see also** 18 Pa.C.S.A. § 3125(a)(1) (prohibiting "engag[ing] in penetration, **however slight**, of the genitals . . . ." (emphasis added)); **Commonwealth v. Ortiz**, 457 A.2d 559, 561 (Pa. Super. 1983) (stating "entrance in the labia is sufficient" to constitute penetration); **Riccio**, **supra** (there is no requirement for skin-to-skin contact). K.J. testified that after the massage, she inspected her underwear and saw her underwear pushed inside her vagina. N.T., 9/24/18, at 54. Finally, contrary to Appellant's claim, the Commonwealth was not required to present any forensic evidence or "physical proof" of penetration. **See Commonwealth v. Gibson**, 951 A.2d 1110, 1140 (Pa. 2008) (there is no constitutional requirement for the police to conduct a forensic analysis of evidence). Thus, there was ample evidence for the jury to convict Appellant of aggravated indecent assault.

Next, Appellant claims that the jury's guilty verdicts on all 3 indecent assault counts are against the weight of the evidence. **See** Appellant's Brief – No. 2092, **supra**, Issues V & VI; Appellant's Brief – No. 2093, **supra**, Issue III.

For an appellant to prevail on a challenge to the weight of evidence, he must establish that the evidence was "so tenuous, vague, and uncertain that the verdict shocks the conscience of the court." **Commonwealth v. Smith**, 146 A.3d 257, 265 (Pa. Super. 2016) (citation omitted). "One of the least

assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of evidence[.]" **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013). Moreover, the weight of the evidence "is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses." **Commonwealth v. Talbert**, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted).

Appellant asserts his indecent assault convictions are so contrary to the weight of the evidence that they shock one's sense of conscience. Concerning K.J., Appellant contends:

> The record is devoid of evidence that Appellant intended to act with a purpose of arousing the sexual desire in himself or K.J. The room was dark and Appellant was focusing on the area that he normally did. When he was made aware that he may have gone too far up her leg, he stopped.

Appellant's Brief – No. 2092, at 16. Appellant also challenges the evidence supporting the jury's verdict of aggravated indecent assault of K.J., again alleging a lack of evidence of penetration. **Id.** at 15. Concerning J.G., Appellant asserts that J.G.'s own testimony established that Appellant "was massaging her in the usual manner[; though] he may have quickly brushed her vagina, he did not knowingly or intentionally bring about a touching." Appellant's Brief – No. 2093, at 12.

The trial court found no merit to Appellant's weight challenges. **See** Trial Court Opinion and Order, 3/26/19, at 1-3. The court concluded:

> Though [Appellant's] testimony directly contradicted the testimony of both K.J. and J.G., the jury clearly found that [Appellant] was not a credible witness. [Appellant] produced no other evidence to directly impeach K.J. or J.G. Further, the jury thoughtfully parsed through the evidence and testimony, as shown by their questions to the court and their decision to find [Appellant] not guilty of aggravated indecent assault with regard to J.G. The court finds nothing in the jury's verdict to shock one's sense of justice.

*Id.* at 2-3. The record supports this analysis, and the verdict likewise does not shock our conscience. We decline Appellant's invitation to assume the role of the fact-finder and to reweigh the evidence on appeal. *See, e.g., Commonwealth v. Santiago*, 980 A.2d 659, 664 (Pa. Super. 2009) (concluding that trial court did not abuse its discretion in denying weight challenge where appellant asked this Court to reweigh the evidence). Accordingly, the trial court did not abuse its discretion in denying Appellant's post-sentence motion and weight of the evidence challenges.

Appellant next claims the trial court erred in admitting the purported expert testimony of Nick Peters, where it was not probative and highly prejudiced Appellant.[11] *See* Appellant's Brief – No. 2092, *supra*, Issue VII; Appellant's Brief – No. 2093, *supra*, Issue IV.

In reviewing a challenge to the trial court's discretion in permitting expert testimony, we are guided by the following:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed

---

[11] Appellant does not challenge Peters' qualification as an expert in the field of massage therapy techniques and protocol.

only upon a showing that the trial court abused its discretion. The standard for qualification of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine. A witness does not need formal education on the subject matter of the testimony, and may be qualified to render an expert opinion based on training and experience.

**Smith**, 206 A.3d at 560 (citations and quotations omitted).

Appellant claims Peters' testimony was improper because:

[t]he proper techniques of a massage was never an issue in this case. The jury hearing about the proper techniques of a massage would have little probative value, on the issue of whether Appellant, in fact, committed the specific offenses for which he was charged. . . . Most of the questioning [of Peters] had little to do with the facts of the case as presented by the victim[s;] for example, there was never an indication that the victim's genitals were exposed, yet Mr. Peters was asked the question if it was proper to have a patient's genitals exposed.

Appellant's Brief – No. 2092, at 28-29 (breaks omitted); Appellant's Brief – No. 2093, at 25-26.

Initially, Appellant fails to explain how Peters' testimony prejudiced him. **See Commonwealth v. Schley**, 136 A.3d 511, 515 (Pa. Super. 2016) ("To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." (citation omitted)). It is not the role of this Court to develop Appellant's argument. **See Commonwealth v. Kane**, 10 A.3d 327, 331 (Pa. Super. 2010) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant." (citation omitted)). In any event, we are unpersuaded by

Appellant's bald claim that Peters' testimony was irrelevant and improperly admitted. Indeed, Peters' testimony was permissible to educate the jury on proper procedures and protocols employed by massage therapists; this specialized knowledge was outside the ken of laypersons. *See Smith*, *supra*. Peters testified, *inter alia*, about how draping should be used to cover the intimate areas of a client's body, and he stated that a massage therapist's hands should never go underneath the draping. N.T., 9/24/18, at 238-39. In light of the nature of the alleged assaults, this testimony was clearly relevant. Finally, we are persuaded by the Commonwealth's argument that Peters' testimony "was offered to refute any claim by [Appellant] that he 'slipped' and touched the genitals of [the victims], or that it was some sort of mistake." Commonwealth Brief at 33. This issue does not merit relief.

Next, Appellant next sets forth several issues asserting that the trial court erred in granting the Commonwealth's 404(b) motion, and admitting highly prejudicial evidence of Appellant's uncharged bad acts in previous massages of other clients, including S.S. and E.G. *See* Appellant's Brief – No. 2092, *supra*, Issues VII & IX; Appellant's Brief – No. 2093, *supra*, Issues V, VI & VII.

We review challenges to the admission of evidence for an abuse of discretion. *See Smith*, *supra*. The Pennsylvania Supreme Court has instructed:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with

- 20 -

those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009).

To establish one of the exceptions set forth in Rule 404(b)(2), there must be "a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question[.]" *Commonwealth v. Sami*, 2020 PA Super 294, at *6 (Pa. Super. 2020) (citation and emphasis omitted). Additionally, the term "unfair prejudice" in Rule 404(b)(2) "means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Commonwealth v. Dillon*, 925 A.2d 131, 141 (Pa. 2007). "[W]hen weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence." *Id.*

In this appeal, the two pertinent 404(b) exceptions are "common plan or scheme" and "absence of mistake." Concerning the former, we have stated:

When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same

- 21 -

perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Commonwealth v. Tyson*, 119 A.3d 353, 358-59 (Pa. Super. 2015) (*en banc*) (citation omitted); *see also id.* at 360 n.3 ("The common scheme exception does not require that the two scenarios be identical in **every** respect." (emphasis in original)).

The standard for admission of evidence under the "absence of mistake" exception is virtually the same as the common plan or scheme exception; namely, the evidence "must be distinctive and so nearly identical as to become the signature of the same perpetrator, and its probative value must not be undermined by the lapse in time between incidents." *Commonwealth v. Cosby*, 224 A.3d 372, 401 (Pa. Super. 2019) (citations and quotation marks omitted).

Here, Appellant argues that the alleged assaults against the victims and S.S. and E.G. were insufficiently similar and did not evidence any particular pattern of behavior by Appellant. *See* Appellant's Brief – No. 2092, at 20 ("The only similarity between the incidents involving [the victims and E.G] and S.S. is that they [all] went to Appellant seeking massage therapy."); Appellant's Brief – No. 2093, at 16 (same). Appellant further contends that the prior alleged assaults of S.S. and E.G. are too remote in time to be properly admitted under Rule 404(b), as they allegedly occurred approximately 5-6 years prior to trial. *See* Appellant's Brief – No. 2092, at 20, 24; Appellant's Brief – No. 2093, at 16-17, 20. Finally, Appellant argues that the trial court failed to make "any assessment" of the highly prejudicial nature of the testimony presented by E.G. and S.S. *Id.*

Conversely, the trial court reasoned:

After considering the totality of the circumstances of each alleged incident, the court finds that the incidents involving S.S. and E.G. are substantially similar to the events alleged in the two dockets at bar. In the case of S.S. and E.G., and [both of the] victims at the underlying dockets, the complaints were made by [Appellant's] female massage clients. It is alleged that [Appellant] massaged S.S. and E.G. and the two [] victims in the case at bar previously and was appropriate and professional on those prior occasions. Then, with each client, [Appellant] eventually deviated from the usual professional massages and worked his way further up the leg until he touched their vaginas. Although the complaints were made by women of different ages and races, all complaints were filed by female clients and they all involved at least one professional and appropriate massage before [Appellant] worked his way up the leg too far. The court finds these situations are substantially similar such that they may indicate a common plan and/or lack of mistake.

The court must also consider the remoteness of the prior bad acts. The incident involving S.S. is alleged to have occurred in 2013 and the incident involving E.G. is alleged to have occurred in 2012. The charges at these two dockets are the result of incidents occurring in [] December of 2016 and January of 2017. The court does not find that the incidents occurring four (4) and five (5) years prior to the events at issue are too remote to be probative.

Finally, the court must decide if the probative value is outweighed by the potential [prejudicial] effect of this evidence. The Commonwealth asserts these incidents were substantially similar, that this evidence is crucial due to the lack of witnesses to the events at issue, and that a curative instruction is sufficient to prevent the jury from considering the testimony for an inappropriate purpose. The court agrees that the allegations involving S.S. and E.G. are substantially similar to the allegations at the two underlying dockets. The similarities between these four (4) allegations indicate a common plan in which [Appellant] earned the trust of clients before moving his massages higher up their legs and touching their vaginas. At each docket, there are only two (2) witnesses who were present at the time of the massages. Therefore, the jury will be forced to choose between two versions of the events[,] and this evidence of a common plan will be relevant to determining whether there is a common scheme, and also to proving [that Appellant] had the requisite intent for the alleged acts. The court additionally finds that a curative instruction would be sufficient to guide the jury in the appropriate use of this evidence, as it is presumed that jurors will follow the instructions provided by the court.

[Appellant's] challenge to the testimony of S.S. and E.G. pertains largely to the credibility of these individuals. The issue of credibility is well within the province of the jury.

Opinion and Order, 9/20/18, at 4-6 (some capitalization omitted).

Our review discloses that the trial court's analysis is amply supported by the record and the law, and we discern no abuse of discretion. *See, e.g., Commonwealth v. Gordon*, 673 A.2d 866, 869-70 (Pa. 1996) (holding evidence of appellant's similar prior sexual assaults was not unduly prejudicial

under Rule 404(b)(2) where Commonwealth was required to prove non-consensual sexual touching occurred; evidence was necessary for prosecution of case, where uncorroborated testimony of victim might lead jury to determine there was reasonable doubt as to whether appellant committed crime charged); *Tyson*, 119 A.3d at 360-61 (reversing trial court's exclusion of defendant's prior rape conviction in case charging defendant with rape and related sex offenses; evidence of prior rape conviction was admissible under common plan or scheme exception where facts of prior conviction and facts of current case showed defendant was an invited guest in each female victims' home, was cognizant of each victims' compromised state, and had vaginal intercourse with each victim while victim was unconscious; any differences between incidents concerned details which were not essential to alleged common scheme); *see also Commonwealth v. Aikens*, 990 A.2d 1181, 1185-86 (Pa. Super. 2010) (holding 10-year time lapse was not excessive for admissibility of evidence under the common plan exception).  In sum, the trial court did not err in granting the Rule 404(b) motion and admitting the challenged testimony under the common plan and absence of mistake exceptions.

Appellant next asserts, in the appeal at No. 2092, that the trial court erred in denying his motion for a mistrial, made after S.S. gave her opinion on the credibility of the victims, because S.S.'s remark prejudiced Appellant and deprived him of a fair trial.  Appellant's Brief – No. 2092, Issue X, *supra*.

"It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion." *Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011) (citation omitted). "In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial." *Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (citation omitted). "A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Chamberlain*, 30 A.3d at 422 (citation and quotation marks omitted); *see also Commonwealth v. Laird*, 988 A.2d 618, 638 (Pa. 2010) (noting that a mistrial is an extreme remedy). It is also settled that a mistrial is not necessary where cautionary instructions are adequate to overcome any potential prejudice. *Commonwealth v. Spotz*, 716 A.2d 580, 593 (Pa. 1998); *Commonwealth v. Leap*, 222 A.3d 386, 392 (Pa. Super. 2019) (same). The law presumes that a jury will follow the trial court's instructions. *Commonwealth v. Speight*, 854 A.2d 450, 458 (Pa. 2004).

At trial, the following exchange occurred on redirect examination of S.S.:

> Q. [COMMONWEALTH: Defense counsel] also asked you about when it was that you came forward. Was it when [Appellant] was charged with the crimes that he is here for today?

A.  Yes, I think it was probably one of the first [news] articles that came out that my daughter saw.

Q.  Why was it that you came forward at that time?

A.  Because at the time I wanted the police to know that the person that came forward that was stronger than I[,] was most likely **telling the truth** because this is what happened to me.

N.T., 9/24/18, at 198 (emphasis added).  Defense counsel then moved for a mistrial at sidebar based on S.S.'s statement.  *Id.* at 199.  The trial court declined to grant a mistrial.  Instead, it issued the following cautionary instruction, agreed upon by the parties, as follows:

> With regard to the testimony you just heard, you have heard evidence tending to prove that [Appellant] was guilty of improper conduct for which he is not on trial.  I am speaking specifically of the testimony of [S.S.].  This evidence is before you for a limited purpose; that is, for the purpose of tending to show a common scheme or rebut any claim of mistake.  This evidence must not be considered by you in any way other than for the purpose I just stated.  You must not regard this evidence as showing that [Appellant] is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

*Id.* at 204-05; *see also id.* at 202 (defense counsel stating to the court: "I know that there is an instruction on 404(b) where it's like for the limited purpose of proving pattern . . ., not for propensity to commit the crime.").

On appeal, Appellant argues the trial court's cautionary instruction was insufficient to cure the highly prejudicial nature of S.S.'s statement, where "no instruction was given to the jury to disregard the statement [] itself or to strike the statement from the record."  Appellant's Brief – No. 2092, at 28.  Appellant also contends that "the Commonwealth purposefully elicited [the

improper remark] from S.S. with the sole intention of proving the alleged crime[s]" against the victims. *Id.* at 26.

We first note that Appellant may not challenge the adequacy of the trial court's cautionary instruction where defense counsel agreed to it and never objected. *See* N.T., 9/24/18, at 202-03; *see also Commonwealth v. Page*, 965 A.2d 1212, 1222 (Pa. Super. 2009) ("No objection was made concerning the adequacy of the cautionary instruction. Where an objection is made, then a curative instruction issued, appellant's only challenge is to the adequacy of the curative instruction. Because [a]ppellant did not object to the instruction, any claim in relation to its adequacy is waived.") (citations omitted); *Commonwealth v. Gooding*, 818 A.2d 546, 552 (Pa. Super. 2003) (failure to make a timely, specific objection to jury instruction waives challenge to content of the instruction on appeal). Also, Appellant's counsel never requested that S.S.'s statement be stricken from the record. *See id.*; *see also* Pa.R.A.P. 302(a) (claims may not be raised for the first time on appeal). Further, and contrary to Appellant's argument, defense counsel stated at sidebar that the prosecutor did not intentionally elicit S.S.'s statement. N.T., 9/24/18, at 201 ("I'm not saying that [the prosecutor] asked that question knowing what [S.S.] was going to answer"); *see also Commonwealth v. Sattazahn*, 631 A.2d 597, 608 (Pa. Super. 1993) (stating the "nature of the reference and whether the remark was intentionally elicited by the

Commonwealth are [] factors to be considered in determining whether a mistrial is necessary." (citation omitted)).

In any event, we conclude that the trial court's prompt cautionary instruction was sufficient to ameliorate any prejudice Appellant may have suffered from S.S.'s brief statement, which did not prevent the jury from rendering a true verdict. **See Leap**, 222 A.3d at 392 (holding that appropriate curative instructions to the jury could overcome error of admission of expert testimony bolstering the victim's credibility;[12] further, like the instant case, the trial court instructed the jury multiple times that they were the sole judges of the credibility of witnesses); **see also Chamberlain**, **supra**. This issue fails.

Next, Appellant argues the trial court unlawfully sentenced him to a mandatory minimum 25 years of incarceration under 42 Pa.C.S.A. § 9718.2, where the Commonwealth failed to prove all requirements of the statute. **See** Appellant's Brief – No. 2092, **supra**, Issue XI; Appellant's Brief – No. 2093, **supra**, Issue VII.

---

[12] We acknowledge that the court's cautionary instruction did not touch upon S.S.'s bolstering of the victims' credibility. However, even if the court erred in this regard, the error was harmless and did not deprive Appellant of a fair trial. **See Commonwealth v. Moore**, 937 A.2d 1062, 1073 (Pa. 2007) ("An error may be deemed harmless, *inter alia*, where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict."). Here, the uncontradicted evidence of Appellant's guilt was overwhelming.

"When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Summers***, 2021 Pa. Super. 11, at *19 (Pa. Super. 2021) (citation omitted).

Section 9718.2 provides, in relevant part:

> Any person who is convicted . . . of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the person had previously been **convicted** of an offense set forth in section 9799.14 . . . or **an equivalent crime in another jurisdiction**, be sentenced to a minimum sentence of at least 25 years of total confinement[.]

42 Pa.C.S.A. § 9718.2(a)(1) (bold emphasis added). The statute further provides that the sentencing court "shall [] determine, by a preponderance of the evidence, the previous **convictions** of the offender and, if this section is applicable, shall impose sentence in accordance with this section." ***Id.*** § 9718.2(c) (emphasis added).

Here, the Commonwealth's Notice stated:

> Implication of the[] mandatory sentence is triggered by [Appellant's] prior convictions by plea of guilty at: CR-00105-96 Elmira City Court, Elmira, New York . . . .
>
> On January 21, 1997[, Appellant] pled guilty at Criminal Docket CR-00105-96, Legacy Docket Number 96-25788 to: One (1) count of Sexual Abuse in the third degree. (See attached Commonwealth Exhibit 1 [(the "New York record")]). On January 21, 1997, [Appellant] was sentenced as follows:
>
> 1) Conditional Discharge (1 year[], restitution $604.75)
>
> 2) Imprisonment 90 days

Notice, 11/28/18, at 1.

Concerning the New York offense, Appellant concedes "the elements of the purported conviction were present," *i.e.*, for purposes of application of subsection 9718.2(a)(1). Appellant's Brief – No. 2092, at 30; Appellant's Brief – No. 2093, at 26. However, Appellant challenges "whether or not his previous conviction in New York was in fact a conviction." ***Id.***; ***see also*** 42 Pa.C.S.A. § 9718.2(a)(1) (requiring the offender to have "previously been convicted" of a qualifying offense). Appellant contends that the:

> New York [record] did not state the terms of a plea, what the Appellant may or may not have stated on the record, what may or may not have been stated against Appellant on the record, or what finding the New York Court made in regards to the facts of that case. Once the [applicability of the] mandatory sentence was challenged based on the accuracy of the record, a hearing should have been held with the Appellant and the Commonwealth having an opportunity to present evidence.

Appellant's Brief – No. 2092, at 32; Appellant's Brief – No. 2093, at 28-29.

The trial court rejected Appellant's challenge, explaining:

> [Appellant] admitted at sentencing that he had previously been charged in New York with a crime that "is the equivalent of Pennsylvania's indecent assault statute." N.T., 12/13/19, at 4. [Appellant] argued at sentencing that he was not actually convicted for the purposes of section 9718.2 because he received a conditional discharge[; however, Appellant's] counsel acknowledged that he was not entirely familiar with New York law. ***Id.*** New York Penal Law § 65.05 states:
>
> > When the court imposes a sentence of conditional discharge, the defendant shall be released with respect to the **conviction** for which the sentence is imposed without imprisonment or probation supervision but subject, during the period of conditional discharge, to such conditions as the court may determine.
>
> N.Y. Penal Law § 65.05 (McKinney) [(emphasis added)].

- 31 -

The above-stated law clearly indicates that a conditional discharge is given to defendants who have been **convicted** of a crime. A conditional discharge is therefore only a sentencing tool which courts may use as an alternative to imprisonment and probation. It is a prerequisite to a conditional discharge that the defendant be convicted of the crime. Therefore, a showing that [Appellant] received a conditional discharge for a sex offense in 1997 does not negate, but rather supports, that [Appellant] was convicted of an equivalent offense under section 9718.2.

Trial Court Opinion, 3/26/19, at 12 (emphasis added, citations modified).

The trial court's reasoning is supported by the record and the law, and we agree with its conclusion. Moreover, the record as to Appellant's New York offense reveals that he was also sentenced to 90 days' **imprisonment** for his conviction. Since it is clear that Appellant had a prior qualifying conviction for purposes of subsection 9718.2(a)(1), there was no need for the trial court to conduct a separate hearing; Appellant's counsel was afforded an opportunity to dispute the equivalent crime at sentencing. No relief is due.

Finally, Appellant argues that the sentencing court unlawfully applied a mandatory sentence where the jury was not asked to find, beyond a reasonable doubt, whether Appellant had a prior "conviction," for purposes of subsection 9718.2(a)(1).[13] **See** Appellant's Brief – No. 2092, **supra**, Issue XII; Appellant's Brief – No. 2093, **supra**, Issue IX. Appellant relies on the landmark decision in **Alleyne**, 570 U.S. at 108 (holding that under the Sixth

---

[13] Appellant states he is raising this issue for the purpose of issue preservation, in the event there is a change in the law.

- 32 -

Amendment right to a jury trial, facts that increase mandatory minimum sentences must be submitted to the jury and found beyond a reasonable doubt).

As Appellant acknowledges, *Alleyne* does not invalidate mandatory minimum sentencing statutes that concern prior convictions. *Commonwealth v. Watley*, 81 A.3d 108, 117 (Pa. Super. 2013) (*en banc*); *see also Alleyne*, 570 U.S. at 111 n.1 (upholding *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), where the Court held that the fact of a prior conviction does not need to be submitted to the jury and found beyond a reasonable doubt).

Accordingly, as all of Appellant's issues lack merit, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

signature

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/12/2021