J-S18043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON DEAN DAVIS | : | |
| | : | |
| Appellant | : | No. 1220 WDA 2023 |

Appeal from the Judgment of Sentence Entered July 20, 2023
In the Court of Common Pleas of McKean County
Criminal Division at No(s): CP-42-CR-0000116-2022,
CP-42-CR-0000292-2021

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED: July 15, 2024**

Aaron Dean Davis ("Davis") appeals from the judgment of sentence following his jury convictions of six counts of unlawful contact with a minor[1].[2] For the reasons discussed below, we affirm.

We take the underlying facts and procedural history from our review of the certified record.[3] In 2021, Davis met S.H. ("Aunt") through a computer

---

[1] 18 Pa.C.S.A. §§ 6318(a)(2) and (4).

[2] Davis was charged in two other unrelated matters. The three cases, all of which involved sexual offenses against minors, were consolidated for trial. In case CP-42-CR-0000116-2022, a jury convicted Davis of charges of obscene and other sexual materials, unlawful contact with a minor, and related offenses. In case CP-42-CR-0000191-2022, a jury acquitted Davis of charges of rape of a minor and related offenses.

[3] Because the sole issue raised by Davis with respect to case CP-42-CR-0000116-2022, concerns the legality of sentence, we will not delineate the facts underlying that conviction.

app. *See* N.T. Trial, 1/17/23, at 18. After informing Davis she was "taken" and thus only interested in making new friends, the two corresponded via the app and by text. *Id*. at 17-18, 21-22. At some point, Davis told Aunt he had looked at her Facebook page and questioned her about a photograph of a girl he said he thought was her sister but was her thirteen-year-old niece, Y.H. ("Daughter"). *See id*. at 17, 19-20, 21. Davis asked for Daughter's phone number, and said he wanted to buy Daughter clothes and go shopping with her. *See id*. at 18, 20, 22. Aunt initially told Davis "No" but he persisted; she then contacted her sister, the child's mother, A.H. ("Mother"). *See id*. at 18-20, 22. Mother told Aunt to give Davis her telephone number but say it was Daughter's. *See id*.

Davis messaged Mother's phone, which he thought belonged to Daughter. *See id*. at 25-26. During the exchange, Davis made various statements which made clear he knew Daughter was thirteen. *See id*. at 26-27, 31. Davis sent multiple sexually explicit texts, including the following: (1) asking if Daughter needed a bra; (2) asking if Daughter was on birth control; (3) asking "[i]f we do anything, would I have to buy condoms or pull out?"; (4) asking "are you a virgin?"; (5) stating "so you want to ride my cock;" and (6) asking Daughter to send him explicit pictures. *Id*. at 27-30. Mother then contacted the local police and showed them the text messages. *See id*. at 24, 27.

City of Bradford Police Officer Matthew Gustin ("Officer Gustin") met with Mother, examined her phone, photographed Davis's texts; and spent approximately forty-minutes in Mother's presence posing as Daughter and texting with Davis. *See id*. at 31, 35, 37-39. During the text conversation, Davis asked, "Can I come in your mouth?" and then sent a picture of his clothed lap, saying, "Do you like?" *Id*. at 39. Officer Gustin responded, "I don't know, never have." *Id*. at 40. Davis then asked, "Do you want to see my D?" *Id*. at 45. When Officer Gustin responded, Davis sent two photos of his penis along with messages asking, "Can I be the first inside you?" and "Did I make you wet?" *Id*. at 45-46. Davis asked Officer Gustin to send him explicit pictures and sent a video of himself masturbating. *See id*. at 46-47. Officer Gustin continued the text conversation with Davis two days later, enlisting the aid of Police Officer Shelby Walters Fuqua ("Officer Fuqua"). *See id*. at 47-48.

At Officer Gustin's direction, Officer Fuqua spoke on the phone with Davis, pretending to be Daughter. *See id*. at 55-56. During that conversation, Davis asked her to describe her underwear and asked for a photo of her in the underwear. *See id*. at 56.

Following a police investigation, the Commonwealth filed charges against Davis in all three cases noted above. A jury trial took place in January 2023. In case CP-42-CR-0000292-2021, a jury convicted Davis of the above-listed charges. After receipt of a pre-sentence investigation report and an

assessment by the sexual offender assessment board ("SOAB"), the trial court held a sexually violent predator ("SVP") hearing. At the conclusion of the hearing, the trial court found Davis to be an SVP. *See* N.T. SVP Hearing, 6/7/23, at 33. Because Davis had a prior conviction in New York State which required him to register as a sex offender,[4] the Commonwealth issued notice of intent to seek the mandatory minimum sentence pursuant to 42 Pa.C.S.A. § 9718.2. The trial court imposed an aggregate sentence of seventy-five to one-hundred-and-fifty years in prison, to be followed by nine years of probation. *See* N.T. Sentencing, 6/20/23, at 2, 14. Despite being represented by counsel, Davis filed a timely *pro se*[5] notice of appeal challenging his convictions on both cases.[6]

On appeal, Davis raises the following issues for our review.

1. Whether the evidence presented by the Commonwealth at trial was insufficient to find [Davis] guilty of violating 18 Pa.C.S.A. § 6318(a)(4) (unlawful contact with a minor) as to counts 1 through 6 in case no. CP-42-CR-0000292-2021?

2. Whether the trial court's imposition of sentence under 42 Pa.C.S.A. § 9178.2 is legally invalid because the court did not have adequate records and no showing was made that [Davis] had been convicted of a qualifying prior offense under the laws

---

[4] Davis also had a 2022 conviction in McKean County for failing to register as a sex offender.

[5] *See Commonwealth v. Williams*, 151 A.3d 621, 624 (Pa. Super. 2016) (holding this Court is required to docket *pro se* notices of appeal despite the appellant being represented by counsel).

[6] Davis and the trial court complied with Pa.R.A.P. 1925.

> of this Commonwealth or another jurisdiction before applying the mandatory minimum sentencing scheme?

Davis's Brief at 4 (capitalization and citation format regularized, bolding omitted).

Before reaching Davis's issues, we address our jurisdiction. As noted, Davis's single notice of appeal contained two docket numbers. In **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), our Supreme Court held "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case," or the appeal will be quashed. **Id**. at 976-77; **see also** Pa.R.A.P. 341, note. Here, at sentencing, the trial court informed Davis he had the right to file "an appeal" within thirty days of sentencing, not that he needed to file a separate appeal for each docket number. N.T. Sentencing, 7/20/23, at 15-16. Pursuant to **Commonwealth v. Larkin**, 235 A.3d 350 (Pa. Super. 2020) (*en banc*), and **Commonwealth v. Stansbury**, 219 A.3d 157 (Pa. Super. 2019), this language constitutes a breakdown in court operations, and we thus decline to quash Davis's appeal. **See Larkin**, 235 A.3d at 354 (finding breakdown in court operations and declining to quash, where defendant was misinformed of his appellate rights); **Stansbury**, 219 A.3d at 159 (finding breakdown in court operations where PCRA court advised appellant he could appeal dismissal of petition by filing within 30 days "***a written notice*** of appeal to the Superior Court") (emphasis in original). Accordingly, we address Davis's substantive claims.

Davis's first issue challenge the sufficiency of the evidence in case CP-42-CR-0000292-2021. Pertinently:

> [w]e review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[]finder to find every element of the crime beyond a reasonable doubt. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact[]finder.

**Commonwealth v. Miller**, 172 A.3d 632, 640 (Pa. Super. 2017) (internal citations and quotation marks omitted).

The crimes code defines unlawful contact with a minor, in pertinent part, as follows:

> **(a) Offense defined.**--A person commits an offense if the person is intentionally in contact with a minor, or *a law enforcement officer acting in the performance of duties who has assumed the identity of a minor . . .* for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:
>
> * * * * *
>
> (2) Open lewdness as defined in section 5901 (relating to open lewdness).
>
> * * * * *
>
> (4) Obscene and other sexual materials and performances as defined in section 5903 (relating to obscene and other sexual materials and performances).

18 Pa.C.S.A. § 6318(a)(2) and (4) (emphasis added).[7]

The crimes code defines "open lewdness" as a person doing "any lewd act which he knows is likely to be observed by others who would be affronted or alarmed." 18 Pa.C.S.A. § 5901. The crimes code defines "obscene" as a material or performance if:

> (1) the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;
>
> (2) the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section; and
>
> (3) the subject matter, taken as a whole, lacks serious literary, artistic, political, educational or scientific value.

18 Pa.C.S.A. § 5903(b).

Davis contends the Commonwealth failed to prove he was in "contact" with either a minor or a law enforcement officer posing as a minor because most of the contact was with Mother and he had only forty-five minutes to an hour of contact with Officer Gustin. *See* Davis's Brief at 13-26. Davis also

---

[7] For purposes of Section 6318, "contacts" is defined as:

> Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa.C.S.A. § 6318(c).

argues the testimony of Mother and Officer Gustin regarding who had control over the phone and during what timeframe was speculative. *See id*.[8]

The trial court explained the evidence:

clearly demonstrates that [Davis] had contact with a law enforcement officer, who he thought was a 13-year-old female, and he sent a video of himself masturbating and pictures of his erect penis. He communicated through an "electronic communication system." Therefore, there is no merit to his assertions on appeal about the lack of contact.

Regarding . . . open lewdness . . . the above outlined evidence demonstrates that [Davis] believed he was communicating with a 13-year-old when he was in fact communicating with Officer Gustin. . . . [Davis] sent images of his erect penis and a video of himself masturbating. Both constituted lewd acts. Therefore, [Davis] is not entitled to relief on appeal.

Trial Court Opinion, 12/6/23, at 4 (capitalization standardized).

The record and law support the trial court's conclusion. Viewing the evidence in the light most favorable to the Commonwealth, Davis believed Officer Gustin was a thirteen-year-old girl and not only texted her pictures of his erect penis and a video of him masturbating, but asked if he could "come in your mouth?" and "do you want to see my D?" among other lewd texts. *See* N.T. Trial, 1/17/23, at 39-47. Davis asked Officer Fuqua, also posing as

---

[8] Davis does not cite to any legal support for his contention that the "contact" 18 Pa.C.S.A. § 6318 addresses must be of a particular length to sustain a conviction for unlawful contact with a minor. Moreover, Davis views the evidence in the light most favorable to himself and selectively reviews Officer Gustin's testimony, both in violation of the applicable standard of review.

a thirteen-year-old girl, to describe her underwear and send him explicit pictures. *See id*. at 55-56. This evidence is sufficient to demonstrate Davis had unlawful contact with a minor. *See  Commonwealth v. Levy*, 83 A.3d 457, 465-66 (Pa. Super. 2013) (finding evidence sufficient to sustain a conviction of unlawful contact with a minor where defendant sent victim links to pornographic websites); *Commonwealth v. Simpson*, 249 A.3d 1176 (Pa. Super. 2021) (unpublished memorandum at *4) (holding evidence sufficient to sustain a conviction for unlawful contact with a minor where defendant sent pictures of his genitals to the victim and asked her to send him nude pictures).[9]  Davis's first issue does not merit relief.

In his second claim, Davis challenges the legality of his mandatory minimum sentence pursuant to 42 Pa.C.S.A. § 9718.2. The statute provides in pertinent part:

### § 9718.2. Sentences for sexual offenders

**(a) Mandatory sentence.**--

(1) Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9799.14 or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of

---

[9] See Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decision of Superior Court filed after May 1, 2019, may be cited for persuasive value).

this title or other statute to the contrary. Upon such conviction, the court shall give the person oral and written notice of the penalties under paragraph (2) for a third conviction. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

* * * * *

**(c) Proof of sentencing.**--The provisions of this section shall not be an element of the crime, and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. ***If the offender or the attorney for the Commonwealth contests the accuracy of the record***, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section. Should a previous conviction be vacated and an acquittal or final discharge entered subsequent to imposition of sentence under this section, the offender shall have the right to petition the sentencing court for reconsideration of sentence if this section would not have been applicable except for the conviction which was vacated.

42 Pa.C.S.A. § 9718.2(a)(1), (c) (emphasis added). The statute does not define the phrase, "complete record." Our scope and standard of review for a challenge to the legality of sentence is settled, our standard of review is *de novo*, and our scope of review is plenary. *See Commonwealth v. Gilliam*, 249 A.3d 257, 276 (Pa. Super. 2021).

Davis concedes the Commonwealth gave notice of its intent to seek the mandatory minimum sentence but argues his sentence is illegal because: (1)

- 10 -

the Commonwealth did not furnish the trial court with a complete record at the time of sentencing; (2) the Commonwealth circumvented its obligation to prove there was a qualifying offense; and (3) the court never found Davis had a qualifying prior offense. *See* Davis's Brief at 28-30.

With respect to Davis's argument that the trial court did not have a complete record, Davis's only proof for this claim is testimony by Paul Everett, the SOAB investigator at the SVP hearing approximately three weeks *before* the sentencing, that because of New York State laws and the Covid pandemic, he could not obtain the criminal complaint and affidavits in the New York State conviction to forward to the SOAB evaluator. *See* N.T. SVP Hearing, 6/7/23, at 7, 9-11, Davis's Brief at 28. Whether the SOAB investigator was able to obtain certain documents from New York for the SOAB evaluator's review is irrelevant to whether the *Commonwealth* obtained a complete record for purposes of sentencing pursuant to 42 Pa.C.S.A. § 9718.2(c). Davis has not pointed to, and we see nothing in, the sentencing record, wherein the Commonwealth stated it was unable to obtain complete records from New York State and/or where Davis ever raised the issue of an incomplete record.

Davis's contention that the Commonwealth used his conviction for failing to register in Pennsylvania as a qualifying offense for his sentence is belied by the record. *See* Davis's Brief at 28-30. The Commonwealth did not argue Davis's failure to register as a sex offender was a qualifying offense under 42 Pa.C.S.A. § 9718.2. *See* N.T. Sentencing, 7/20/23, at 5-6. The discussion of

Davis's failing to register conviction, occurred during a dispute over the allocation of credits for time served. *See id*. The only reference to the failing to register conviction with respect to the mandatory minimum sentence was the Commonwealth's resubmission of a brief it filed in Davis's separate failure to register case which detailed Davis's New York State criminal history; a submission to which Davis did not object. *See id*. at 1.

Davis also argues the Commonwealth did not prove, and the trial court did not make a finding, that he had a qualifying conviction. *See* Davis's Brief at 30. However, 42 Pa.C.S.A. § 9718.2 only requires a hearing and the presentation of evidence regarding the qualifying conviction if the defendant "contests the accuracy of the record." 42 Pa.C.S.A. § 9718.2(c). At sentencing defendant *conceded* he had a qualifying offense:

> [Trial Counsel]: As far as the application of the mandatory minimum penalties, appropriate notice was concededly given of these particular cases, so the [c]ourt — legally, I believe, has to impose a mandatory minimum of [twenty-five] to [fifty] years for the request[ed] counts. . . . [Davis] does have a prior sex offense conviction, which would be a predicated offense for purposes of the application of the mandatory.

N.T. Sentencing, 7/20/23 at 9. Thus, because Davis conceded that he had a qualifying conviction, his claim that his sentence was illegal does not merit relief.

For the reasons discussed above, Davis's claims lack merit. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

- 12 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/15/2024